IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SHAMAR STANFORD,                          :
                                          :
                    Petitioner,           :
                                          :
        v.                                :        Civil Action No. 18-550-RGA
                                          :
KOLAWOLE AKINBAYO, Warden,                :
and ATTORNEY GENERAL OF THE               :
STATE OF DELAWARE,                        :
                                          :
                    Respondents.          :

_____

## MEMORANDUM OPINION

Shamar Stevens.  *Pro se* Petitioner.

Carolyn Shelly Hake, Deputy Attorney General of the Delaware Department of Justice,
Wilmington, Delaware.  Attorney for Respondents.

September _2ᵈ_, 2021
Wilmington, Delaware

ANDREWS, UNITED STATES DISTRICT JUDGE:

Petitioner Shamar Stanford filed an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 and four supplements/amendments to the application (hereinafter collectively referred to as "Petition"). (D.I. 1; D.I. 3; D.I. 6; D.I 7; D.I. 13) The State filed an Answer in opposition. (D.I. 14) For the reasons discussed, the Court will deny the Petition.

## I.   BACKGROUND

### A.  Factual Background

On the morning of November 19, 2015, Delaware State Police Detective Linus, who was assigned to the FBI Safe Streets Task Force, and other officers executed a residential search warrant at an apartment along Philadelphia Pike in Claymont. (D.I. 15-2 at 5) While waiting for Petitioner to answer the door, officers heard noises coming from a window air conditioning unit in the rear bedroom of the apartment. (D.I. 15-9 at 34) Prior to executing the search warrant, officers took Petitioner, who answered the door holding his daughter in his arms, into custody inside the apartment pursuant to a Pennsylvania fugitive warrant. (D.I. 15-2 at 5; D.I. 15-9 at 34) During the search of Petitioner's apartment, Detective Linus found a loaded Ruger 95 9 millimeter handgun concealed in the top vent of a window air conditioning unit. (*Id.*) Police also found a loaded Raven Arms MP-25 .25 caliber handgun in a purse in the master bedroom. In the kitchen, officers discovered a green leafy substance in a clear plastic bag on top of the refrigerator, next to a metal grinder, black scale, and clear plastic baggies; the substance weighed .65 grams and field-tested positive for marijuana. (*Id.*) As a result of a computer inquiry, officers learned that Petitioner had a prior felony conviction in January 2015 for possession with intent to deliver a controlled substance. (*Id.*)

On the same day, police also executed a search warrant for an Infiniti FX35, which the FBI had observed Petitioner driving on November 16, 2015, which was parked outside the apartment building. (*Id.*) During the search, police found a brown cloth bag concealed underneath the center console and that contained a white rock substance in a clear plastic bag; the substance weighed 17.3 grams and field-tested positive for crack cocaine. (*Id.*) In the glove box, officers found $3,100 in twenty dollar bills, broken into three bundles. (*Id.*)

### B. Procedural Background

Following a preliminary hearing on December 9, 2015, Petitioner was indicted on two counts of possession of a firearm by a person prohibited ("PFBPP"), one count of endangering the welfare of a child, and three drug offenses. (D.I. 15-1 at 1); *see Stanford v. State*, 186 A.3d 800 (Table), 2018 WL 2230702, at *1 (Del. May 15, 2018). In January 2016, Petitioner was appointed counsel. (D.I. 15-1, Entry No. 3) At his final case review on May 31, 2016, Petitioner rejected a plea offer, and the case was set for trial on July 6, 2016. (D.I. 15-1, Entry No. 10) At the State's request, the case was continued two times because more time was needed for DNA testing to be completed. (D.I. 14 at 2-3) In September 2016, the Superior Court granted appointed counsel's motion to withdraw, permitted Petitioner to proceed *pro se*, and granted Petitioner's request to continue the trial date until December 13, 2016 to allow him time to find other counsel. (D.I. 15-1, Entry Nos. 26, 27, 28, 29) On October 6, 2016, Petitioner moved for the appointment of new counsel. (D.I. 15-1, Entry No. 30) The Superior Court denied the motion. (D.I. 15-1, Entry No. 31) Petitioner retained private counsel ("defense counsel"), who entered an appearance on October 21, 2016. (D.I. 15-1, Entry No. 32)

2

On December 12, 2016, Petitioner pled guilty to one count of PFBPP and endangering the welfare of a child, in exchange for which the State entered a *nolle prosequi* on the four additional charges. (D.I. 15-6 at 18)  That same day, the Superior Court sentenced Petitioner as follows: (1) for the PFBPP conviction, to fifteen years at Level V incarceration, suspended after five years for two years of Level III probation; and (2) for endangering the welfare of a child, to one year at Level V incarceration suspended for one year of Level III probation. *See State v. Stanford*, 2017 WL 2484588, at *1 (Del. Super. Ct. June 7, 2017).  Petitioner did not appeal his conviction or sentences. (D.I. 15-4 at 1; D.I. 15-7 at 2)

On December 28, 2016 and January 12, 2017, Petitioner filed *pro se* motions to modify his sentence under Superior Court Criminal Rule 35(b). (D.I. 15-1, Entry Nos. 44, 46)  In January 2017, Petitioner filed *pro se* motions for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61. (D.I. 15-1 , Entry Nos. 51, 52)  In February 2017, Petitioner filed *pro se* motions to "amend and appeal" the denial of a second suppression hearing and for the transcript of the suppression hearing. (D.I. 15-1, Entry Nos. 54, 55)  On March 2, 2017, the Superior Court denied Petitioner's request for a second suppression hearing and his request for a transcript. (D.I. 15-1, Entry No. 56)  On March 27, 2017, the Superior Court denied Petitioner's Rule 35(b) motions and his motions to withdraw his guilty plea and to "amend and appeal." (D.I. 15-1, Entry Nos. 59-61)  Petitioner did not appeal the Superior Court's March 2 or 27 decisions.

On April 10, 2017, Petitioner filed an amended Rule 61 motion ("first Rule 61 motion") and filed a second amended Rule 61 motion on May 17, 2017 ("supplemental Rule 61 motion"). (D.I. 15-1, Entry Nos. 62, 65)  The Superior Court denied the first Rule 61 motion on June 7,

3

2017. (D.I. 15-1, Entry No. 67) Petitioner appealed, and the Delaware Supreme Court remanded the case back to the Superior Court to consider the claims in the supplemental Rule 61 motion. *See Stanford v. State*, 2017 WL 3165454 (Del. July 25, 2017). On remand, the Superior Court denied Petitioner's supplemental Rule 61 motion. *See Stanford v. State*, 2017 WL 3706959 (Del. Super. Ct. Aug. 28, 2017). On May 15, 2018, the Delaware Supreme Court affirmed the Superior Court's denial of both the first and supplemental Rule 61 motions. *See Stanford v. State*, 2018 WL 2230702, at *1.

On July 12, 2018, Petitioner filed another *pro se* motion for transcripts of the suppression hearing and sentencing, which the Superior Court denied. (D.I. 15-1, Entry Nos. 76, 77) Petitioner did not appeal that decision.

On July 26, 2018, Petitioner filed a pro se motion to amend his July 12, 2018 request for transcripts. (D.I. 15-1, Entry No. 78) On October 1, 2018, Petitioner filed a second Rule 61 motion, along with motions to appoint counsel and for transcripts. (D.I. 15-1, Entry Nos. 79, 82, 83)

On December 21, 2018, Petitioner filed a *pro se* petition for writ of mandamus in the Delaware Supreme Court, seeking to compel the Superior Court to provide free transcripts of the suppression and preliminary hearing, and his sentencing, which that court denied. *See In re Matter of Stanford*, 204 A.3d 828 (Table), 2019 WL 494456, at *1-2 (Del. Feb. 7, 2019). In March 2019, Petitioner filed a *pro se* motion to compel the State or defense counsel to produce materials related to his case. (D.I. 15-1, Entry No. 87)

On March 8, 2018, a Superior Court Commissioner issued a Report and Recommendation that Petitioner's second Rule 61 motion should be summarily dismissed as barred under Rules

4

61(i)(1)-(4) and that his motions to appoint counsel, to compel, and for transcripts at the State's

expense should be denied. *See State v. Stanford*, 2019 WL 1110902, at *3 (Del. Super. Ct. Mar.

8, 2019). Petitioner appealed the Commissioner's Order to the Delaware Supreme Court, which

dismissed the appeal for lack of jurisdiction. *See Stanford v. State*, 210 A.3d 144 (Table), 2019

WL 1762693 (Del. Apr. 18, 2019) Petitioner then appealed the Commissioner's Order in the

Superior Court. (D.I. 15-1, Entry No. 90) On June 5, 2019, the Superior Court adopted the

Commissioner's Report and Recommendation and denied the Rule 61 motion. (D.I. 15-11 at 40-

49) The Superior Court also denied Petitioner's motion to amend his request for transcripts,

interpreting that request as a motion for reargument of the Court's July 2018 order. (*Id*. at 8-9)

The Superior Court also denied Petitioner's motion to amend, motion to compel, and motion to

appoint counsel. (*Id*. at 9-10) The Delaware Supreme Court affirmed the Superior Court's June

5, 2019 decision. *See Stanford v. State*, 222 A.3d 1044 (Table), 2019 WL 6048918 (Del. Nov.

14, 2019).

## II.    GOVERNING LEGAL PRINCIPLES

### A. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the

petitioner has exhausted all means of available relief under state law. *See* 28 U.S.C. § 2254(b);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275

(1971). The AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in
> custody pursuant to the judgment of a State court shall not be
> granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts
> of the State; or

5

> (B)(i)  there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).  A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989).  A federal legal claim is "fairly presented" to state courts when there is: "(1) reliance on pertinent federal cases employing constitutional analysis; (2) reliance on state cases employing constitutional analysis in like fact situations; (3) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; [or] (4) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane,* 489 U.S. 288, 297-98 (1989).  Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  Similarly, if a petitioner presents a habeas

claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless,* 172 F.3d at 260; *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."

*House v. Bell*, 547 U.S. 518, 537-38 (2006); *see Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

### B. Standard of Review

If a state's highest court adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *See Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009). The deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). As explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 99.

Finally, when reviewing a habeas claim, a federal court must presume that the state court's determinations of factual issues are correct. *See* 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1);

8

*Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to "factual issues," whereas the unreasonable application standard of § 2254(d)(2) applies to "decisions").

## III.   DISCUSSION

Petitioner asserts the following nineteen claims for relief: (1) he was deprived of his Sixth Amendment right to choice of counsel (D.I 1 at 5; D.I. 3 at 5; D.I. 6 at 7) ("Claim One (A)"); (2) defense counsel provided ineffective assistance by failing to advise him of the advantages and disadvantages of the plea agreement, appeal rights, and appeal waiver ("Claim One (B)") (D.I. 1 at 5; D.I. 1-1 at 1; D.I. 3 at 5); (3) his guilty plea was involuntary because he was not provided competent legal advice and did not understand he was waiving his right to appeal by pleading guilty ("Claim Two") (D.I. 1 at 7; D.I. 1-1 at 1; D.I. 3 at 7; D.I. 7 at 1); (4) the police search of his apartment violated Petitioner's Fourth Amendment rights because they lacked probable cause to do a "protective sweep" ("Claim Three") (D.I. 1 at 8; D.I. 1-1 at 23; D.I. 3 at 8; D.I. 6 at 2-4); (5) defense counsel provided ineffective assistance by not filing a direct appeal and an appeal from the suppression hearing ("Claim Four") (D.I. 1 at 10; D.I. 1-1 at 1; D.I. 3 at 10; D.I. 6 at 4; D.I. 6 at 5); (6) Detective Linus committed perjury during the suppression hearing ("Claim Five") (D.I. 1 at 16; D.I. 1-1 at 2; D.I. 3 at 16); (7) defense counsel provided ineffective assistance by failing to uncover relevant evidence at the "evidentiary [suppression] hearing" ("Claim Six") (D.I. 1-1 at 2); (8) defense counsel and the attorney who represented Petitioner at the preliminary hearing provided ineffective assistance by failing to cross examine Detective Linus when he committed perjury ("Claim Seven") (D.I. 1-1 at 2; D.I. 6 at 1); (9) "Moorish Americans" are not governed under the same laws as blacks and other slaves

9

and courts lack jurisdiction to convict Petitioner ("Claim Eight") (D.I. 1-2); (10) the Superior

Court abused its discretion by denying Petitioner's suppression motion because of bias ("Claim

Nine (A), (B)")[1] (D.I. 6 at 1; D.I. 13 at 7); (11) defense counsel provided ineffective assistance

by failing to object to prosecutorial misconduct ("Claim Ten") (D.I. 6 at 5); (12) defense counsel

provided ineffective assistance by failing to advocate for a reasonable continuance and insisting

that Petitioner accept the plea ("Claim Eleven") (D.I. 6 at 5); (13) defense counsel provided

ineffective assistance by not advising Petitioner that he may have a particular defense available if

he proceeded to trial ("Claim Twelve") (D.I. 6 at 5); (14) defense counsel was ineffective for

failing to file a motion to dismiss ("Claim Thirteen") (D.I. 6 at 5); (15) the Superior Court's

participation in the plea negotiations amounted to judicial misconduct ("Claim Fourteen") (D.I. 6

at 6); (16) the Superior Court engaged in judicial misconduct by conducting an improper plea

colloquy ("Claim Fifteen") (D.I. 6 at 6); (17) Petitioner was constructively denied counsel at his

plea hearing ("Claim Sixteen") (D.I. 6 at 6); (18) the Delaware Supreme Court violated

Petitioner's due process rights by dismissing his untimely appeal ("Claim Seventeen") (D.I. 6 at

7); (19) the Superior Court violated Petitioner's due process right to trial transcripts on appeal

("Claim Eighteen") (D.I. 6 at 8); and (20) Petitioner's plea agreement was involuntary because

he entered into it under duress ("Claim Nineteen").  (D.I. 7 at 1).

---

[1]The Court liberally construes Claim Nine as alleging two different-but-related arguments: (1) the Superior Court violated Petitioner's Fourth Amendment rights by denying his suppression motion (Claim Nine (A)); and (2) the Superior Court engaged in judicial misconduct and violated his due process rights by denying his suppression motion due to bias (Claim Nine (B)). The Court analyzes these two variations separately.

10

### A. Claims Eight and Eighteen: Not Cognizable

In Claim Eight, Petitioner contends that the Delaware state courts did not have jurisdiction to convict him because he is a "Moorish American." (D.I. 1-2) This argument has no basis in law or fact. Petitioner is subject to the laws of the jurisdiction in which he resides, regardless of his nationality or religion. *See e.g., Jones-Bey v. Alabama,* 2014 WL 1233826, at *3 (N.D. Ala. Mar. 25, 2014) ("There is no basis in the law for such a claim" that the State of Alabama did not have jurisdiction to prosecute and imprison petitioner based on his ancestry as a "Moorish American."); *Bey v. Bailey,* 2010 WL 1531172, at *4 (S.D.N.Y. Apr. 15, 2010) ("the suggestion that Petitioner is entitled to ignore the laws of the State of New York by claiming membership in the Moorish-American nation is without merit and cannot be the basis for habeas relief."); *Osiris v. Brown*, 2005 WL 2044904, at *2-3 (D. N.J. Aug. 24, 2005); *see also Byrd v. Blackman*, 2006 WL 2924446, at *1 n.1 (E.D. Pa. Oct. 5, 2006) (explaining the background of the Moorish beliefs). Therefore, Petitioner's status as a "Moorish American" does not provide a viable challenge to his convictions.

In Claim Eighteen, Petitioner contends that the Superior Court violated his due process rights when it denied his July 2018 motion for transcripts of the December 2016 suppression hearing and sentencing. According to Petitioner, he needed the transcripts in order to draft the ineffective assistance of counsel claims he wanted to raise in his state post-conviction proceedings.

The argument in Claim Eighteen alleges a state law error that is not cognizable on federal habeas review, because Petitioner's ultimate criticism is with the Superior Court's action in a state collateral proceeding. *See Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998)

("[The] federal role in reviewing an application for habeas corpus is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the habeas proceeding."); *see also Lambert v. Blackwell*, 387 F.3d 210, 247 (3d Cir. 2004) ("alleged errors in [state] collateral proceedings ... are not a proper basis for habeas relief"). Accordingly, the Court will deny Claim Eighteen for failing to assert a proper basis for federal habeas relief.

### B. Claims Three and Nine (A): Fourth Amendment Violations

Claims Three and Nine (A) allege that Petitioner's Fourth Amendment rights were violated by the police search of his apartment and the Superior Court's denial of his suppression motion. For the following reasons, the Court concurs with the State that Claims Three and Nine do not warrant federal habeas relief.

Fourth Amendment claims are not cognizable on federal habeas review if the petitioner had a full and fair opportunity to litigate the claim in the state court. *See Stone v. Powell*, 428 U.S. 465, 494 (1976); *see also Wright v. West*, 505 U.S. 277, 293 (1992). A petitioner is considered to have had a full and fair opportunity to litigate such claims if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure, irrespective of whether the petitioner actually availed himself of that mechanism. *See U.S. ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1978); *Boyd v. Mintz*, 631 F.2d 247, 250 (3d Cir. 1980). Conversely, a petitioner has not had a full and fair opportunity to litigate a Fourth Amendment claim, and therefore avoids the *Stone* bar, if the state system contains a structural defect that prevented the state court from fully and fairly hearing the petitioner's Fourth Amendment argument. *See Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002). Notably, "an

12

erroneous or summary resolution by a state court of a Fourth Amendment claim does not overcome the [*Stone*] bar." *Id.*

In this case, Petitioner filed a pre-trial motion to suppress the evidence obtained from the search of his apartment pursuant to Rule 41 of the Delaware Superior Court Rules of Criminal Procedure. The Superior Court denied the suppression motion after conducting a hearing, and he did not appeal that decision. *See Stanford*, 2017 WL 2484588, at *5 n.43.

This record demonstrates that Petitioner was afforded a full and fair opportunity in the Delaware state courts to litigate his Fourth Amendment argument. The fact that Petitioner disagrees with the state court decisions and the reasoning utilized by the state courts is insufficient to overcome the *Stone* bar. Therefore, the Court will deny Claims Three and Nine (A) as barred by *Stone*.

### C. Procedurally Barred Claims

#### 1. Claim One (A)

In Claim One (A), Petitioner contends that state action deprived him of his Sixth Amendment right to choose counsel because the State opposed, and the Superior Court denied, his request for a continuance on the day before trial to allow him to find different counsel. Petitioner wanted a different attorney to represent him because he believed his first counsel had been ineffective during his suppression hearing.

The record reveals that Petitioner did not exhaust state remedies for Claim One (A) because he did not fairly present the issue contained therein to the Delaware Supreme Court on direct appeal[2] or on post-conviction appeal. At this juncture, any attempt by Petitioner to present

---

[2]To the extent Petitioner may have raised Claim One (A) in the *pro se* notice of appeal he allegedly mailed to the Delaware Supreme Court in December 2016, that action on his part did

13

Claim One (A) in a new Rule 61 motion would dismissed as time-barred under Rule 61(i)(1),

and as procedurally defaulted under Rule 61(i)(3) for failing to raise it in the proceeding leading

to his conviction. *See DeAngelo v. Johnson*, 2014 WL 4079357, at \*12 (D. Del. Aug. 15, 2014)

(Rule 61(i)(1)); *Gattis v. Snyder*, 46 F. Supp. 2d 344, 367 (D. Del. 1999) (Rule 61(i)(3)).

Although Rule 61(i)(1) provides for an exception to the one-year time limitation if the untimely

Rule 61 motion "asserts a retroactively applicable right that is newly recognized after the

judgment of conviction is final," no such right is implicated in the instant Claim. Similarly, the

exceptions to the bars in Rule 61(i)(1) and (3) contained in Rule 61(i)(5) and (d)(2) do not apply

to Petitioner's case, because he does not allege actual innocence, lack of jurisdiction, or that a

new rule of constitutional law applies to the instant arguments. Given these circumstances, the

Court must treat Claim One (A) as exhausted but procedurally defaulted, meaning that the Court

cannot review the merits of the Claim absent a showing of cause-and-prejudice or a miscarriage

of justice.

To the extent Petitioner attempts to establish cause by blaming defense counsel for failing

to file a direct appeal and/or advise him about his appeal rights, the attempt is unavailing. The

plea transcript contains Petitioner's statements that he desired to go forward with the plea and

that trial counsel "fully advised" him of his rights. (D.I. 15-11 at 62) During his plea colloquy,

Petitioner stated that he understood he was waiving his right to an appeal by pleading guilty, he

had an opportunity to discuss the matter with trial counsel, and he was satisfied with trial

counsel's representation. (*Id.* at 74-75) Absent clear and convincing evidence to the contrary

---

not exhaust state remedies because the Delaware Supreme Court did not receive the notice of
appeal within the thirty-day appeal period. (*See* D.I. 15-10 at 34)

14

(none of which is presented here), Petitioner is bound by the representations he made in the plea agreement and the truth-in-sentencing guilty plea form, and during the plea colloquy. *See Blackledge v. Allison*, 431 U.S. 63, 73 (1977); *Thomas v. Snyder*, 2001 WL 1297812, at *3 (D. Del. Oct. 3, 2001) (holding that statements made under oath in open court carry a strong presumption of verity on federal habeas review). Moreover, by pleading guilty, Petitioner waived any claim of constitutional error related to government conduct in his case prior to the entry of the plea. *See Class v. United States*, 138 S. Ct. 798, 805 (2018) (concluding that "[a] valid guilty plea . . . renders irrelevant – and thereby prevents the defendant from appealing – the constitutionality of case-related government conduct that takes place before the plea is entered").

To the extent Petitioner attempts to establish cause under *Martinez v. Ryan*, 566 U.S. 1, 16-17 (2012) because the Superior Court did not appoint counsel to represent him in his Rule 61 proceeding, the attempt fails. In *Martinez*, the Supreme Court held that inadequate assistance or the absence of counsel during an initial-review state collateral proceeding may (under certain circumstances) establish cause for a petitioner's procedural default of a claim of ineffective assistance of trial counsel. *Id.* at 12, 16-17. Since *Martinez* can only apply to excuse the default of claims alleging ineffective assistance of trial counsel, it does not provide a method of establishing cause for the freestanding claim for relief asserted in Claim One (A).

The absence of cause obviates the Court's need to address the issue of prejudice. Nevertheless, Petitioner has failed to demonstrate prejudice from his default. The Sixth Amendment does not guarantee a defendant the unqualified right to the services of a particular lawyer. *See Wheat v. United States*, 486 U.S. 153, 159 (1980) ("[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the

15

essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."). At most, the Constitution prohibits only arbitrary or unreasonable interference with a defendant's selection of counsel. *See generally Ungar v. Sarafite*, 376 U.S. 575, 589 (1964) ("The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel."); *see also United States v. Burton*, 584 F.2d 485, 489-92 (D.C. Cir. 1978) ("Once a fair and reasonable initial opportunity to retain counsel has been provided, and adequate counsel obtained, the court, mindful of the accused's interest in having counsel in whom he has confidence, is free to deny a continuance to obtain additional counsel if, upon evaluation of the totality of the circumstances, it reasonably concludes that the delay would be unreasonable in the context of the particular case."). Although the right to counsel is absolute, there is no absolute right to a particular attorney. *See U.S. ex rel Carey v.Rundle*, 409 F.2d 1210, 1215 (3d Cir. 1969).

In turn, as the United States Supreme Court has recognized, "a trial [court has] wide latitude in balancing [a defendant's] right to counsel of choice against the needs of fairness, and against the demands of its calendar." *United States v. Gonzalez–Lopez*, 548 U.S. 140, 152 (2006). "[W]hen a defendant requests substitution of counsel on the eve of trial," or raises concerns about counsel's representation, the court has the "'duty to inquire into the basis for the client's objection to counsel.'" *McMahon v. Fulcomer*, 821 F.2d 934, 942 (3d Cir.1987).

16

The following factual summary and review of the plea colloquy transcript demonstrates that the Superior Court satisfied its duty of inquiry and then properly concluded that Petitioner was knowingly and voluntarily proceeding with defense counsel to enter a guilty plea.

> Initially, [Petitioner] was appointed counsel following his indictment in January 2016. On May 31, 2016, [Petitioner] rejected a plea agreement at his final case review and the matter was set for trial on July 6, 2016. However, on June 6, 2016, [Petitioner] filed a *pro se* "Motion to Dismiss Current Counsel and/or Appoint New Counsel." Simultaneously, [Petitioner] filed a *pro se* Motion to Suppress. [The Superior] Court then granted the State's continuance request on two occasions for more time to obtain DNA laboratory results from the FBI. Meanwhile, [Petitioner's] then-counsel filed a Motion to Withdraw as Counsel stating that he and [Petitioner] disagreed on whether there existed a good faith basis to file a suppression motion in this matter. The Motion to Withdraw as Counsel was granted on September 28, 2016. [Petitioner's] request for new appointed counsel was denied.
>
> On October 21, 2016, while trial was fast approaching, [Petitioner's] new counsel entered his appearance. He filed a Motion to Suppress on behalf of Defendant on November 14, 2016 and a suppression hearing was held on December 2, 2016. The Court heard testimony from the arresting officers and argument from both the State and defense counsel. The Motion was denied on the record.

*Stanford*, 2017 WL 2484588, at *5 n. 43.

The day before Petitioner's trial was to begin, Petitioner and defense counsel appeared before the Superior Court to enter a guilty plea. (D.I. 15-11 at 51-54)  During the colloquy, Petitioner expressed dissatisfaction with defense counsel's performance at the suppression hearing, and requested a continuance.  (*Id.* at 51)  The State opposed the continuance, explained the procedural history of the case, and asserted, "[T]he State would argue [Petitioner] has three options. He can take the plea today, he can go to trial today with [defense counsel], or he can go

17

to trial tomorrow *pro se*. The State is ready to go. Although there are no civilian witnesses,

there are out-of-state witnesses, again, because this was done through the FBI." (*Id.* at 55)

The Superior Court agreed with the State that Petitioner had three options, "especially

because [the prior judge] previously approved [Petitioner's] application to go *pro se*." (*Id.* at 57)

The Superior Court continued to explain:

> So when you decided to go *pro se* or when you asked the [prior
> judge] if you could represent yourself, at that time, you were
> represented by someone from the Public Defender's Office? Okay.
> So, you had appointed counsel and you didn't like – you didn't like
> him, her, and therefore, the [prior judge] allowed you to proceed *pro
> se*. All right? So, you had that request granted. And, now, when
> you were going *pro se*, you needed a continuance so you could hire
> private counsel. You were able to hire private counsel and the [prior
> judge] then gave you time, right, to continue your case so that you
> could get yourself established with your private attorney. And
> you've had an opportunity to do that. And at the suppression
> hearing, there was, I guess, sufficient information presented where
> the State was successful in being able to move forward in the way
> that they wished to proceed with this case.

(*Id.* at 56-57) Petitioner was provided time to confer with defense counsel, after which he

decided to resolve his case through a plea agreement. (*Id.* at 59)

This record demonstrates that Petitioner was afforded due process. The Superior Court

conducted a thorough inquiry into Petitioner's reasons for a continuance request, and provided an

accurate description of Petitioner's options. Moreover, when viewed in context with

Petitioner's prior continuance request, prior change of counsel, and the late timing of the

continuance request at issue on the eve of trial, the Superior Court did not err by denying

Petitioner's motion for a continuance. *See Fischetti v. Johnson*, 384 F.3d 140, 145-46 (3d Cir.

2004) (although finding error in the state court requiring habeas petitioner to proceed *pro se* at

trial, noting that "[a] defendant's right to counsel is not without limit and cannot be the

18

justification for inordinate delay or manipulation of the appointment system," and that "the need for an orderly and expeditious trial may require that a defendant proceed with counsel not of his preference"). In short, Petitioner knowingly, intelligently, and voluntarily pled guilty with defense counsel's assistance, after having been given the choice of proceeding to trial (either *pro se* or with counsel) or accepting the State's plea offer, and time to consider these options. (D.I. 15-11 at 9-27)

Finally, given Petitioner's failure to provide new reliable evidence of his actual innocence, Petitioner's procedural default cannot be excused under AEDPA's miscarriage of justice exception. Accordingly, the Court will deny Claim One (A) as procedurally barred from federal habeas review.

### 2. Claims One (B), Two, Four, Six, Ten, Eleven, Twelve, and Thirteen

Claims One (B), Two, Four, Six, Ten, Eleven, Twelve, and Thirteen assert various instances of defense counsel's ineffective assistance. The record reveals that Petitioner presented all eight Claims to the Superior Court in his first Rule 61 motion and supplemental Rule 61 motion. The Superior Court denied all eight Claims, but Petitioner only appealed the denial of Claim Eleven. *See Sanford*, 2019 WL 1110902, at *3-4 (describing the claims raised in Petitioner's first Rule 61 proceeding).

In these circumstances, Claims One (B), Two, Four, Six, Ten, Twelve, and Thirteen are unexhausted because Petitioner did not present them to the Delaware Supreme Court on post-conviction appeal. At this juncture, any attempt by Petitioner to present Claims One (B), Two, Four, Six, Ten, Twelve, and Thirteen in a new Rule 61 motion would be time-barred under Rule 61(i)(1). *See DeAngelo v. Johnson*, 2014 WL 4079357, at *12 (D. Del. Aug. 15, 2014).

19

Although Rule 61(i)(1) provides for an exception to the one-year time limitation if the untimely Rule 61 motion "asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final," no such right is implicated in the instant Claims  Similarly, the exceptions to Rule 61(i)(1)'s time-bar contained in Rule 61(i)(5) and (d)(2) do not apply to Petitioner's case, because he does not allege actual innocence, lack of jurisdiction, or that a new rule of constitutional law applies to the instant arguments.  Given these circumstances, the Court must treat Claims One (B), Two, Four, Six, Ten, Twelve, and Thirteen as exhausted but procedurally defaulted, meaning that the Court cannot review the merits of the Claims absent a showing of cause-and-prejudice or a miscarriage of justice.

As for Claim Eleven, even though Petitioner presented this Claim to the Delaware Supreme Court on post-conviction appeal, the Delaware Supreme Court affirmed the Superior Court's denial of Claim Eleven as time-barred under Rule 61(i)(1), successive under Rule 61(i)(2), and procedurally defaulted under Rule 61(i)(3). *See Stanford*, 2018 WL 2230702, at *1. By applying the procedural bars of Rule 61(i)(1), (2), and (3), the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-64 (1984) that its decision rested on state law grounds.  In turn, this Court has consistently held that Rule 61(i)(1) and (3) are independent and adequate state procedural rules. *See Simmers v. Akinbayo*, 2021 WL 1092577, at *5 (D. Del. Mar. 22, 2021) (Rule 61(i)(3); *Trice v. Pierce*, 2016 WL 2771123, at *4 (D. Del. May 13, 2016).  Therefore, the Court also cannot review the merits of Claim Eleven absent a showing of cause for the default, and prejudice resulting therefrom, or that a miscarriage of justice will occur if the claim is not reviewed

20

Petitioner has not asserted any cause for his default of the instant eight Claims. To the extent the Court should liberally construe Petitioner's contentions as an attempt to rely on *Martinez v. Ryan* to excuse his default, his reliance is misplaced. Pursuant to *Martinez,* a petitioner demonstrates that a state court's failure to appoint counsel to represent him in an initial collateral proceeding should excuse his default by establishing that the underlying ineffective assistance of trial counsel claims are substantial or, in other words, have "some merit." *Martinez*, 566 U.S. at 14. "To demonstrate that his claim has some merit, a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Workman v. Sup't Albion SCI*, 915 F.3d 928, 938 (3d Cir. 2019) (cleaned up).

Here, Petitioner's eight Claims alleging that defense counsel provided ineffective assistance are not "substantial" under *Martinez* because they are conclusory and belied by the record. For instance, Petitioner affirmed during the plea colloquy that defense counsel advised him about the plea, that he was satisfied with defense counsel's representation and advice, and that defense counsel was not forcing him to enter the plea. (D.I. 15-11 at 67, 74-76) Petitioner also voluntarily corrected his response on the truth-in-sentencing form to indicate his satisfaction with defense counsel's representation and that defense counsel had fully advised him of his rights. (D.I. 15-11 at 66-67; D.I. 15-13) Absent clear and convincing evidence to the contrary (none of which is presented here), Petitioner is bound by the representations he made during the plea colloquy and on the truth-in-sentencing form. *See Blackledge*, 431 U.S. at 73; *Hammons v. State*, 884 A.2d 511 (Table), 2005 WL 2414271, at *1 (Del. Sept. 28, 2006). Further,

21

Petitioner's knowing and voluntary guilty plea waived any claims of ineffective assistance of counsel involving counsel's performance prior to the entry of the guilty plea that do not challenge the voluntariness of his plea. *See Winchester v. Akinbayo*, 2020 WL 3269050, at \*6 (D. Del. June 17, 2020).

Moreover, Petitioner has failed to establish prejudice from any alleged error of counsel in view of the substantial benefits he derived by pleading guilty. Petitioner was originally charged with two counts of PFBPP, endangering the welfare of a child, and three drug offenses. Because he had one prior violent felony conviction within the previous ten years, Petitioner faced between seven and approximately forty-nine years of Level V incarceration if he was convicted of all charges. (*See* D.I. 15-17) Defense counsel, however, successfully negotiated a plea agreement whereby Petitioner pled guilty to one count of PFBPP and endangering the welfare of a child, which reduced Petitioner's potential imprisonment to a minimum of five years and a maximum of sixteen years. In short, none of Petitioner's assertions regarding counsel's performance establish that he would have proceeded to trial and that he would have accepted the risk of up to about forty-nine years of imprisonment.

The miscarriage of justice exception to the procedural default doctrine is also inapplicable to excuse his default, because Petitioner has not provided any new reliable evidence of his actual innocence. Accordingly, the Court will deny Claims One (B), Two, Four, Six, Ten, Eleven, Twelve, and Thirteen as procedurally barred.

### 3. Claim Five

In Claim Five, Petitioner contends that Detective Linus committed perjury in the affidavit of probable cause and while testifying during the suppression hearing. Petitioner presented this

22

argument in his second amendment to his first Rule 61 motion, and the Superior Court denied the argument under Rule 61(i)(3) as procedurally defaulted.  (D.I. 15-16); *see Stanford*, 2017 WL 3706959, at *4.  The Superior Court held that Petitioner "waived his right to challenge the accuracy of the police's account of the charges when he entered his guilty plea and forwent trial."  *Id*.  The Delaware Supreme Court affirmed the Superior Court's judgment.  *See Stanford*, 2018 WL 2230702, at *1.

Petitioner also raised his argument concerning Detective Linus's alleged perjury in his second Rule 61 motion.  (D.I. 15-11 at 24-39)  The Superior Court Commissioner recommended denying the second Rule 61 motion as untimely under Rule 61(i)(1), as successive under Rule 61(i)(2), and as formerly adjudicated under Rule 61(i)(4).  *See Stanford*, 2019 WL 1110902, at *4.  The Superior Court adopted that recommendation and summarily dismissed the second Rule 61 motion, and the Delaware Supreme Court affirmed that decision.  (D.I. 15-11 at 40-49); *see Stanford*, 2019 WL 6048918, at *1.

Claim Five is procedurally defaulted as a result of the  Delaware Supreme Court's separate denials of Claim Five as barred by the independent and adequate state Rules 61(i)(1) and (3).  Petitioner has not alleged any cause for his default of Claim Five, and the *Martinez* rule cannot be used to establish cause for the freestanding constitutional violation asserted in Claim Five.  Given Petitioner's failure to demonstrate cause, the Court will not address the issue of prejudice.  In addition, Petitioner's failure to provide new reliable evidence of his actual innocence precludes the Court from reaching the merits of the Claim to avoid a miscarriage of justice.  Accordingly, the Court will deny Claim Five as procedurally barred.

### 4. Claims Nine (B), Fourteen, and Fifteen

In Claims Nine (B), Fourteen, and Fifteen, Petitioner contends that the Superior Court engaged in the following judicial misconduct: (1) denied his suppression motion due to bias which, in turn, violated his due process rights; (2) participated in the plea negotiations; and (3) failed to conduct a proper plea colloquy. Petitioner presented these three Claims in his second Rule 61 motion, and the Superior Court denied the Claims as untimely under Rule 61(i)(1), successive under Rule 61(i)(2), and defaulted under Rule 61(i)(3) because Petitioner did not raise the claims during his criminal proceeding. *See Stanford*, 2019 WL 110902, at *4-5. The Supreme Court affirmed that decision. *See Stanford*, 2019 WL 6048918, at *1. Given the Delaware state courts' application of the independent and adequate state Rules 61(i)(1) and (3), Claims Nine (B), Fourteen, and Fifteen are procedurally defaulted.

Once again, Petitioner has not asserted any cause for his default, and *Martinez* cannot be relied on to establish cause for these three freestanding constitutional arguments. Although the Court does not need to address the issue of prejudice, the Court nevertheless concludes that Petitioner cannot demonstrate prejudice for the reasons set forth below.

#### a. Judicial bias

It is well-settled that the Due Process Clause requires a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of a particular case. *See Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). Significantly, there is a presumption that judges as public officials properly discharge their official duties, and a habeas petitioner must rebut this presumption by showing actual bias. *Id*. at 909. A petitioner demonstrates actual bias by showing that he was treated "unfairly" by the trial judge, and "there must be an extremely

high level of interference by the trial judge which creates a pervasive climate of partiality and unfairness." *Marshall v. Hendricks*, 103 F. Supp. 2d 749, 799 (D.N.J. 2000), *rev'd in part on other grounds*, 207 F.3d 36 (3d Cir. 2002). However, the Supreme Court has recognized that there are some instances where a judge's implied bias creates such a high probability of actual bias that it violates the Constitution. *See Withrow v. Larkin*, 421 U.S. 35, 46 (1975). "Among these cases are those in which the adjudicator has a pecuniary interest in the outcome and in which he has been the target of personal abuse or criticism from the party before him." *Id.* at 47. Implied judicial bias may be found if the judge had significant prosecutorial and adjudicatory functions in the same case. *See In re Murchison*, 349 U.S. 133, 134-36 (1955). The Supreme Court has indicated that the proper "generalized" inquiry into implied judicial bias is "whether sitting on the case . . . would offer a possible temptation to the average . . . judge to . . .lead him not to hold the balance nice, clear, and true." *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 883 (2009).

Here, Petitioner has failed to provide any facts to support his speculative assertion that the denial of his suppression motion was due to the trial judge's bias. "The fact that the judge ruled adversely to the defense on various motions or objections does not establish any bias, regardless of the correctness of the decision." *Pitts v. Redman*, 776 F. Supp. 907, 927 (D. Del. 1991). Notably, nothing in the record even remotely suggests that the trial judge harbored any personal or implied bias against Petitioner. Therefore, Petitioner cannot demonstrate that he will suffer prejudice from the default of this conclusory and unsupported allegation of judicial bias/due process violation in Claim Nine (B).

25

### b.  Judicial participation in plea negotiations

The record belies Petitioner's allegation that the trial judge participated in the plea negotiations.  (D.I. 15-11 at 50-81)   As previously explained, during the beginning of the plea colloquy on December 12, 2016, Petitioner expressed dissatisfaction with defense counsel's performance during the suppression hearing and requested a continuance.  Petitioner had also expressed his dissatisfaction by writing on the truth-in-sentencing form that he was not satisfied with defense counsel's representation of him. (*Id.* at 60-61; D.I. 15-13)  After the continuance issue was resolved, the judge informed Petitioner that she could not accept the plea based on his written statements on the truth-in-sentencing form that he was not satisfied with his attorney and that he was going to trial. (D.I. 15-11 at 61-62)  Petitioner responded that he did not want to proceed to trial. (*Id.* at 62-63)  The judge asked Petitioner whether he wanted to accept the plea offer, and he replied, "yes." (*Id.* at 63)  The judge proceeded to tell Petitioner that he could enter his plea *pro se* to avoid answering questions about his counsel's representation.  (*Id.* at 63-64)  Petitioner answered that he was "ready to go forward with this plea," with the assistance of defense counsel, and voluntarily corrected his response on the truth-in-sentencing form.  (*Id.* at 64-65, 67)  This record shows that the judge did not participate in plea negotiations by providing Petitioner with the opportunity to go to trial, or accept the plea with or without the assistance of counsel.  Therefore, Petitioner was not prejudiced by his default of Claim Fourteen.

### c.  Improper plea colloquy

Petitioner contends that the Superior Court's plea colloquy was improper because the judge failed to inquire about the attorney-client relationship.  Once again, the record belies Petitioner's assertion.  The plea colloquy transcript reveals that the Superior Court conducted a

careful and thorough inquiry. (D.I. 15-11 at 50-81)  After he initially voiced his displeasure with defense counsel to the Superior Court, Petitioner voluntarily corrected his initial answer on the truth-in sentencing form to reflect that: (1) he was, in fact, satisfied with his counsel's representation; and (2) his counsel had fully advised him of his rights. (*Id*. at 65-67)  The Superior Court then questioned Petitioner as to whether he was now voluntarily answering yes to that question, and Petitioner responded affirmatively. (*Id*. at 66-67)  Defense counsel informed the Superior Court that he had reviewed the guilty plea form with Petitioner, advised Petitioner of all of his constitutional and trial rights that he was forfeiting by entering into the plea, and answered any questions Petitioner had. (*Id*. at 70-71).  Defense counsel also told the Superior Court that he believed that Petitioner was answering the questions on the revised truth-in-sentencing form truthfully and that Petitioner was entering the plea knowingly, voluntarily, and intelligently. (*Id*.)  During the subsequent plea colloquy, Petitioner confirmed that defense counsel's statements were correct. (*Id*. at 71)  Petitioner also told the Superior Court, among other things, that no one was forcing or threatening him to plead guilty and that he had an opportunity to discuss the matter fully with his counsel and that he was satisfied with defense counsel's representation. (*Id*. at 74-75)  To summarize, the transcript of the plea colloquy reflects that the Superior Court judge properly accepted Petitioner's guilty plea as knowing and voluntary.  Therefore, Petitioner cannot establish that he will suffer prejudice as a result of his default of Claim Fifteen.

In addition to not demonstrating cause and prejudice, Petitioner's failure to provide new reliable evidence of his actual innocence precludes the Court from reaching the merits of the

three Claims to avoid a miscarriage of justice. Accordingly, the Court will deny Claims Nine (B), Fourteen, and Fifteen as procedurally barred.

### 5. Claim Sixteen: Constructive Denial of Counsel

In Claim Sixteen, Petitioner contends that he was constructively denied his right to the assistance of counsel during his plea hearing. According to Petitioner, defense counsel acted as a mere spectator and did not offer any assistance during the plea proceeding.

Petitioner did not exhaust state remedies for Claim Sixteen because he did not present the Claim to the Delaware Supreme Court on post-conviction appeal At this juncture, any attempt by Petitioner to present the instant Claim Sixteen in a new Rule 61 motion would be time-barred under Rule 61(i)(1), and the exceptions to Rule 61(i)(1) are inapplicable in this case. Consequently, the Court must treat Claim Sixteen as procedurally defaulted. Petitioner does not assert any cause for his default, and the *Martinez* rule cannot be relied upon to establish cause to excuse Petitioner's failure to raise this freestanding constitutional claim to the Delaware state courts.

In the absence of cause, the Court need not address the issue of prejudice. Nevertheless, as discussed above, the transcript of the plea colloquy demonstrates that defense counsel conferred with Petitioner and advocated for him during the plea hearing. As a result, Petitioner has not demonstrated that he will suffer prejudice as a result of his default.

Finally, Petitioner has not demonstrated that a fundamental miscarriage of justice will occur if the Court does not review this Claim. Therefore, the Court will deny Claim Sixteen as procedurally barred from federal habeas review.

28

### 6.   Claim Seventeen:  Dismissal of Untimely Appeal

In Claim Seventeen, Petitioner contends that the Delaware Supreme Court violated his due process rights by dismissing his direct appeal pursuant to Delaware Supreme Court Rule 29(b) due to his failure to respond to that court's notice to show cause.  According to Petitioner, the appeal was timely filed in December 2016 because he timely mailed his *pro se* notice of appeal, and he never received the Delaware Supreme Court's April 4, 2018 notice to show cause as to why his appeal should not be dismissed as untimely.  Petitioner asserts that the prison sent the notice to show cause back to the Delaware Supreme Court because it mistakenly believed that he had been released.  The Delaware Supreme Court dismissed the appeal after he failed to respond to the notice.  *See Stanford*, 2018 WL 2254783, at *1.

Petitioner presented Claim Seventeen to the Delaware Superior Court in his second Rule 61 motion.  The Superior Court dismissed the Claim as untimely under Rule 61(i)(1), as successive under Rule 61(i)(2), and as defaulted under Rule 61(i)(3) because Petitioner  had failed to previously raise the claim.  The Delaware Supreme Court affirmed that decision.  The fact that the Delaware Supreme Court affirmed the denial of Claim Seventeen under the independent and adequate state rules of Rule 61(i)(1) and (3) means that the Claim is procedurally defaulted.

Petitioner has not explicitly alleged any cause for his default.  To the extent Petitioner attempts to establish cause for his procedural default by asserting that defense counsel was ineffective for failing to appeal, that argument is unavailing.  An attorney's error can constitute cause for a procedural default, but only if the petitioner first presented that ineffectiveness claim to the state courts as an independent claim, and it was determined that the attorney's error

29

amounted to constitutionally ineffective assistance. *See Murray*, 477 U.S. at 488-89. In turn, an ineffective assistance of counsel claim cannot constitute cause if the ineffective assistance of counsel claim is itself procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 453-54 (2000).

As previously discussed, Petitioner procedurally defaulted his argument alleging that defense counsel provided ineffective assistance by not filing a direct appeal (Claim Four). *See supra* Section III.C.2. Therefore, defense counsel's alleged ineffectiveness cannot excuse Petitioner's default of Claim Seventeen.

To the extent Petitioner attempts to establish cause by relying on *Martinez*, his attempt is unavailing because his underlying ineffective assistance of counsel claim is not substantial. During his plea colloquy, Petitioner stated that he was satisfied defense counsel's representation and advice, that he understood that he was waiving his constitutional right to appeal to the Delaware Supreme Court, and that his guilty plea was knowing and voluntary. (D.I. 15-11 at 71-76 ) As previously discussed, given the absence of any clear and convincing evidence to the contrary, Petitioner is bound by these representations. *See supra* Section III.C.1, 2, 4(c), (d).

In the absence of cause, the Court is not required to address the issue of prejudice. Nonetheless, Petitioner cannot show prejudice. Petitioner was sentenced on December 12, 2016. Pursuant to Delaware Supreme Court Rule 6, a timely notice of appeal should have been filed in his case on or before January 5, 2017. *See* Del. Sup. Ct. R. 6 (establishing a thirty day deadline to file a notice of appeal). Although Petitioner alleges that he filed the *pro se* notice of appeal on December 14, 2016, within the requisite thirty-day period, he does not proffer any evidence that his notice of appeal was actually received by the Delaware Supreme Court by the

30

deadline. Nor could he. The record establishes that Petitioner actually filed his notice of appeal

on March 19, 2018, 437 days after expiration of the thirty-day appeal period. (D.I. 15-10 at 32-

35). Furthermore, Petitioner's own pleadings refute his claim that his notice of appeal was

timely filed. For instance, in his opening briefs appealing the Superior Court's denial of his

second Rule 61 motion, Petitioner admitted that he "backdated" the notice of appeal in 2018,

which he "assume[d] that the Supreme Court deem[ed] untimely." (D.I. 15-9 at 7; D.I. 15-10 at

7) This record does not demonstrate that the Delaware Supreme Court actually received

Petitioner's notice of appeal in December 2016 or early January 2017. Consequently, given the

absence of any clear and convincing evidence to the contrary, the Delaware Supreme Court's

factual determination that the notice of appeal was received, and therefore, filed on March 19,

2018, is presumptively correct. *See* 28 U.S.C. § 2254(e)(1).

     Petitioner has failed to establish cause and prejudice, and his failure to provide new

reliable evidence of his actual innocence prevents him from satisfying the miscarriage of justice

exception to the procedural default doctrine. Accordingly, the Court will deny Claim Seventeen

as procedurally barred.

### D. Claims Seven and Nineteen: Meritless

#### 1. Claim Seven

     In Claim Seven, Petitioner contends that defense counsel and the attorney who

represented him during the preliminary hearing provided ineffective assistance by failing to

object to or adequately cross-examine Detective Linus when he allegedly committed perjury

about the probable cause that existed to search Petitioner's apartment. According to Petitioner,

Detective Linus stated in the probable cause affidavit that he was part of the protective sweep

looking for an additional occupant in the apartment when the search uncovered the handgun, but Detective Linus stated during the suppression hearing that he was not part of the protective sweep.  (D.I. 1-1 at 2) Petitioner asserted a substantially similar argument in his second amended first Rule 61 motion, which the Superior Court denied as meritless.  *See Stanford*, 2017 WL 3706959, at *3-4.  The Delaware Supreme Court affirmed "on the basis of the Superior Court's well-reasoned decision."  *Stanford*, 2018 WL 2230702, at *1.  Therefore, Claim Seven will only warrant habeas relief if the Superior Court's decision was either contrary to, or an unreasonable application of, clearly established federal law. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1193-94 (2018) (reiterating that when a higher court affirms a lower court's judgment without an opinion or other explanation, federal habeas law employs a "look through" presumption and assumes that the later unexplained order upholding a lower court's reasoned judgment rests upon the same grounds as the lower court judgment*); Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (under the "look through" doctrine, "where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.").

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny.  *See Wiggins v. Smith*, 539 U.S. 510 (2003).  Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance.  *See Strickland*, 466 U.S. at 688.  Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable

32

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* In the context of a guilty plea, prejudice is demonstrated by showing a reasonable probability that, but for counsel's errors, the petitioner would not have pled guilty and would have insisted on going to trial. *See Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).

Finally, in order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-60 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a strong presumption that the representation was professionally reasonable. *See Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that the Superior Court correctly identified the *Strickland/Hill* standard applicable to Petitioner's ineffective assistance of counsel allegations. Consequently, the Superior Court's decision was not contrary to clearly established federal law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The Court's inquiry is not over, however, because it must also determine if the Superior Court reasonably applied the *Strickland/Hill* standard to the facts of Petitioner's case. *See Harrington*, 562 U.S. at 105-06. When performing this inquiry, the Court must review the Superior Court's denial of Petitioner's ineffective assistance of counsel allegations through a

33

"doubly deferential" lens.[3]  *Id.*  "[T]he question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*  When assessing prejudice under *Strickland*, the question is "whether it is reasonably likely the result would have been different" but for counsel's performance, and the "likelihood of a different result must be substantial, not just conceivable."  *Id.*  And finally, when viewing a state court's determination that a *Strickland* claim lacks merit through the lens of § 2254(d), federal habeas relief is precluded "so long as fairminded jurists could disagree on the correctness of the state court's decision."  *Id.* at 101.

In his second amendment to his first Rule 61 motion, Petitioner alleged that defense counsel was ineffective for failing to "challenge or object" to Detective Linus' perjurious statements made during the suppression hearing.  (D.I. 15-16 at 5)  More specifically, Petitioner asserted that Detective Linus "made some contradicting statements" in the affidavit of probable cause and preliminary hearing, and that Detective Linus lied during the suppression hearing  by saying "that a fugitive could have fled to [the] residence earlier the day of arrest when there were no indications [that] this particular incident [occurred] before arrest took place[. A]lso officers were conducting surveillance at 6:00 a.m. or sometime before that morning.  Officer also stated that I have a prior weapon offense which I do not have."  (*Id.*)  Bypassing the first prong of

---

[3]As explained by the *Richter* Court,

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).

*Richter*, 562 U.S. at 105 (internal citations omitted).

*Strickland* and *Hill*, the Superior Court summarily dismissed this Claim on the basis that

Petitioner had failed to meet his burden of proving "that there is a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different."

*Stanford*, 2017 WL 3706959, at *5. The Superior Court explained that Petitioner did not identify

the particular prejudice he experienced. *Id*.

As previously discussed, Petitioner "knowingly, intelligently, and voluntarily" pled

guilty. By doing so, he waived his right to challenge the alleged defects that occurred prior to

the entry of his plea that do not implicate the voluntariness of his guilty plea, including the

legality of the search conducted in his case. Given this record, the Court concludes that the

Superior Court reasonably applied *Strickland* and *Hill* when determining that Petitioner did not

demonstrate prejudice resulting from defense counsel's failure to object to the instant pre-plea

matter. Accordingly, the Court will deny Claim Seven for failing to satisfy § 2254(d).

### 2. Claim Nineteen: Meritless

After he was sentenced, Petitioner filed in the Superior Court a Rule 35(b) motion to

modify his sentence. Petitioner contended that, during the plea colloquy, he was given an

ultimatum to go to trial with representation he was uncomfortable with, go to trial unprepared

*pro se*, or take a guilty plea that he believed was only favorable to the State. *See Stanford*, 2017

WL 3706959, at *3. The Superior Court denied the Rule 35(b) motion. *Id*.

In Claim Nineteen of this proceeding, Petitioner contends that he was forced to enter the

plea agreement under duress. He alleges that the duress was caused by the State's "unjust

ultimatum" and the Superior Court's refusal to grant a continuance that would have enabled him

to seek new counsel. (D.I. 7 at 1) Petitioner presented this argument in his second amendment to

his first Rule 61 motion,[4] and the Superior Court denied the argument as barred by Rule 61(i)(4) for being formerly adjudicated. *See Stanford*, 2017 WL 3706959, at *3. The Superior Court explained that it had previously rejected this argument when it denied Petitioner's Rule 35(b) motion, and that the Rule 35(b) decision,

> not[ed] that there was no "duress" where the agreement reached between [Petitioner] and the State was merely a function of the "give-and-take" process of plea-bargaining. Quoting *Bordenkircher v. Hayes*, the Court noted that the "acceptance of the basic legitimacy of plea bargaining necessarily implies rejection of any notion that a guilty plea is involuntary in a constitutional sense simply because it is the end result of the bargaining process."

*Stanford*, 2017 WL 3706959, at *3. After setting forth this description when dismissing Claim Nineteen in Petitioner's Rule 61 motion, the Superior Court also noted that "a plea colloquy occurred on the record in open court according to Rule 11(e). The record reflects that Defendant entered his plea 'knowingly, intelligently, and *voluntarily.*'" *Id.* at *3 n. 26.

Here, the State incorrectly asserts that the Superior Court's application of Rule 61(i)(4) to Claim Nineteen demonstrates that the Claim is procedurally defaulted. Although a formerly adjudicated claim barred by Rule 61(i)(4) is defaulted for Delaware state court purposes, on federal habeas review the fact that the claim was formerly adjudicated means that it was decided on the merits. *See Trice v. Pierce*, 2016 WL 2771123, at *4 n.4 (D. Del. May 13, 2016). As explained by the United States Supreme Court, "[w]hen a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review." *Cone v. Bell*, 556 U.S. 449, 466 (2009) ("A claim is procedurally barred when it

---

[4]In his second amendment to his first Rule 61 motion, Petitioner stated he was "subjected to an ultimatum," and he was "wrongfully denied a continuance in order to obtain [] new counsel." He also stated that, since he "did not wish to go trial pro se" due to his ignorance of the law, he was under "duress circumstances [and] only had one option." (D.I. 15-6 at 5)

has not been fairly presented to the state courts for their initial consideration – not when the

claim has been presented more than once."). Given these circumstances, the Court must review

Claim Nineteen under § 2254(d)(1) to determine whether the Superior Court's decision[5] was

either contrary to, or an unreasonable application of, clearly established federal law.

A guilty plea is invalid if it is procured "by actual or threatened physical harm or by

mental coercion overbearing the will of the defendant." *Brady v. United States*, 397 U.S. 742,

750 (1970). Not all inducements to plead, however, are illegal. Threatening harsher penalties is

a normal negotiating tactic during plea bargaining. *See id*. at 750. As explained in

*Bordenkircher*:

> Plea bargaining flows from "the mutuality of advantage" to
> defendants and prosecutors, each with his own reasons for wanting
> to avoid trial. Defendants advised by competent counsel and
> protected by other procedural safeguards are presumptively capable
> of intelligent choice in response to prosecutorial persuasion, and
> unlikely to be driven to false self-condemnation. Indeed, acceptance
> of the basic legitimacy of plea bargaining necessarily implies
> rejection of any notion that a guilty plea is involuntary in a
> constitutional sense simply because it is the end result of the
> bargaining process. By hypothesis, the plea may have been induced
> by promises of a recommendation of a lenient sentence or a
> reduction of charges, and thus by fear of the possibility of a greater
> penalty upon conviction after a trial.

*Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) (cleaned up). Plea negotiations satisfy due

process when a prosecutor does "no more than openly present[] the defendant with the

unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to

prosecution." *Bordenkircher*, 434 U.S. at 365. The voluntariness of a plea "can be determined

---

[5]The record does not contain a copy of the Superior Court's Order denying Petitioner's Rule
35(b) motion. Therefore, when performing the instant § 2254(d) analysis, the Court refers to the
excerpt from the Rule 35(b) Order in the Superior Court's Rule 61 decision, along with the
Superior Court's reference to the plea record.

only by considering all of the relevant circumstances surrounding it." *Brady*, 397 U.S. at 749.
As explained by the Third Circuit, "The ritual of the [plea] colloquy is but a means toward
determining whether the plea was voluntary and knowing. A transcript showing full compliance
with the customary inquiries and admonitions furnishes strong, although not necessarily
conclusive, evidence that the accused entered his plea without coercion and with an appreciation
of its consequences." *United States v. Stewart*, 977 F.2d 81, 84 (3d Cir. 1992).

Turning to the first prong of the § 2254(d)(1) inquiry, the Court notes that, while the
Superior Court cited *Bordenkircher*, it did not cite *Brady*. Nevertheless, the Superior Court's
statement that the plea "occurred on the record in open court according to Rule 11(e)," and that
the "record reflects that [Petitioner] entered his plea 'knowingly, intelligently, and voluntarily,'
indicates that the Superior Court performed an inquiry consistent with the standard articulated in
*Brady*. *See Fahy v. Horn*, 516 F.3d 169, 196 (3d Cir. 2008) (Supreme Court of Pennsylvania's
decision was not "contrary to" clearly established Federal law because it appropriately relied on
its own state court cases, which articulated the proper standard derived from Supreme Court
precedent); *Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the
correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit
comfortably within § 2254(d)(1)'s 'contrary to' clause.").

The Court also concludes that the Superior Court's decision did not involve an
unreasonable application of *Brady* and *Bordenkircher*. To begin, to the extent Petitioner asserts
he was coerced into pleading guilty by the Superior Court's refusal to continue the trial and the
three-choice "ultimatum" by the State, the assertion is belied by the transcript of the plea
colloquy. As previously discussed, the Superior Court's thorough inquiry and Petitioner's clear

38

and explicit statements made in open court support the Superior Court's conclusion that his guilty plea was entered knowingly and voluntarily. *See supra* Section III.C.1, 2, 4(c), (d). Similarly, to the extent Petitioner alleges that he was coerced into pleading guilty out of fear of receiving a greater sentence, the argument fails under *Bordenkircher*. During the portion of the colloquy concerning Petitioner's request for a continuance, the State asserted that "the plea today was to the minimum-mandatory time on the firearm charge which would be five years. That plea will not be offered again." (D.I. 15-11 at 55) The State also asserted, "[I]f the State is successful [at trial], he'll be looking at, I believe, seven years minimum mandatory. And I just want [Petitioner] to know that, if the State is successful at trial, the State will probably be asking for over that." (*Id.* at 56) The State further stated that if Petitioner was found guilty on all charges he could be sentenced "upwards of 40 years." (*Id.*) The State's explanation of the different potential sentences did not constitute coercion; rather, it was an accurate evaluation of the two possible sentences Petitioner could receive. Choosing between a lighter sentence resulting from a plea and possibly a more significant sentence resulting from a trial is the type of choice that is part and parcel of the plea process. Thus, the Court will deny Claim Nineteen as meritless.

## IV.   CERTIFICATE OF APPEALABILITY

A district court issuing a final order denying a § 2254 petition must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). If a federal court denies a habeas petition on

procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id*

The Court has concluded that Petitioner's habeas claims do not warrant relief. In the Court's view, reasonable jurists would not find it debatable that the arguments in Claims Seven and Nineteen fail to make "a substantial showing of the denial of a constitutional right," or that the remaining Claims are either procedurally barred or not cognizable on federal habeas review. Accordingly, the Court declines to issue a certificate of appealability.

## V.   CONCLUSION

For the reasons discussed, the Court will deny the Petition without holding an evidentiary hearing.

An appropriate Order will be entered.